IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| TERRY REED, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL NO. 2:14-cv-294-WHA |
| | ) | |
| DOUG JOHNSON and | ) | |
| DANIEL EARLES, | ) | |
| | ) | |
| Defendants. | ) | |

## RECOMMENDATION OF THE MAGISTRATE JUDGE

## I. INTRODUCTION

Plaintiff Terry Reed ("Reed") brings this action pursuant to 42 U.S.C. § 1983, claiming that defendants Doug Johnson ("Johnson") and Daniel Earles ("Earles") violated Reed's constitutional rights when Reed was arrested on July 16, 2013.  Doc. No. 5.  Reed seeks damages and fees and costs.  *Id.*

Pursuant to the orders of this court, defendants filed an answer, special report, supplemental special report, reply, and supporting evidentiary materials addressing the claims for relief raised in the complaint.  In their reports, defendants deny they violated Reed's constitutional rights, and they assert he is not entitled to relief. Doc. Nos. 7, 15, 16, 29, 37, 41, 42. Upon consideration of the evidentiary materials filed in support thereof, the court construes defendants' reports as a motion for summary judgment, and upon consideration of this motion and the evidentiary materials filed in support thereof, the court concludes that defendants' motion for summary judgment is due to be granted.

## II. SUMMARY JUDGMENT

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam) (citation to former Fed. R. Civ. P. 56 omitted; "issue" altered to "dispute" to reflect the stylistic change in the current rule). The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine [dispute] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (alterations added). The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-24.

The defendants in this case have met their evidentiary burden and demonstrated the absence of any genuine dispute of material fact. Thus, the burden shifts to the plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to the case exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.

1991); *Celotex*, 477 U.S. at 324. Pursuant to Rule 56, "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact" by citing to materials in the record including affidavits, relevant documents or other materials, the court can, among other things, "consider the fact undisputed for purposes of the motion . . . [or] grant summary judgment if the motion and supporting materials— including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(2), (3). A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263.

> In civil actions filed by inmates, federal courts
>
> must distinguish between evidence of disputed facts and disputed matters of professional judgment. In respect to the latter, our inferences must accord deference to the views of prison authorities. Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage.

*Beard v. Banks*, 548 U.S. 521, 530 (2006) (internal citation omitted). The evidence must be admissible at trial, and if the nonmoving party's evidence "is merely colorable . . . or is not significantly probative . . . summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986); Fed. R. Civ. P. 56(e). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice . . . ." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 252). Conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine dispute of material fact and, therefore, do not suffice to oppose a motion

3

for summary judgment. *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (per curiam) (plaintiff's "conclusory assertions . . . , in the absence of [admissible] supporting evidence, are insufficient to withstand summary judgment"). Only disputes involving material facts are relevant, and what is material is determined by the substantive law applicable to the case. *Anderson*, 477 U.S. at 248. To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. Although factual inferences must be viewed in a light most favorable to the nonmoving party and pro se complaints are entitled to liberal interpretation by the courts, a pro se litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact. *Beard*, 548 U.S. at 525; *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). Thus, a plaintiff's pro se status alone does not mandate this court's disregard of elementary principles of production and proof in a civil case. In this case, Reed fails to demonstrate a requisite genuine dispute of material so as to preclude summary judgment on all of his claims against the defendants. *Matsushita*, 475 U.S. at 587.

4

3205ceb5fd350a96

## B. Summary of Material Facts

The court views the facts in the light most favorable to Reed, the nonmoving party. During the time relevant to the complaint, Reed resided in Banks, Alabama,[1] and Johnson and Earles were detectives with the City of Troy, Alabama, Police Department. Johnson Aff. Doc. No. 16-1; Earles Aff. Doc. No. 16-2; Pl.'s Compl. Doc. No. 5.

On July 7, 2013, Johnson investigated an incident at a Troy gas station, where someone used an invalid credit card to buy about 250 gallons of gasoline. Doc. No. 16-1, at 2. Johnson interviewed the store manager, who said the business was more interested in receiving their money than pursuing a criminal case. *Id.* at 3. Johnson did not meet with Reed but spoke with him on the phone, and Johnson told Reed that the store preferred receiving its money over prosecuting a criminal case. *Id.* Johnson learned during the conversation that Reed had a probation officer, and Johnson then spoke with the probation officer, informing the probation officer that the store preferred to have its money instead of to pursue a criminal case. *Id.* Johnson was approved to secure a felony warrant on Reed for the incident but never arrested Reed on it. Johnson later learned that Reed and the store worked out an agreement for Reed to pay for the gas. At that point, the July 7, 2013, incident became a civil matter, and Johnson did not pursue it further. *Id.* Johnson avers he never threatened to retaliate against Reed by arresting him. *Id.*

On July 15, 2013, Johnson learned that a car had been stolen at a local Walmart. The victim left her car keys on top of her car. When she returned the car was gone.

---

[1] For part of the time this lawsuit was pending, Reed was a federal inmate of the Bureau of Prisons, but he has since been released. Doc. Nos. 30, 36.

Walmart's loss prevention officer provided Johnson a surveillance video of the incident as well as the store receipt for purchases by Bobbie Reed ("Bobbie"), whose vehicle had been parked next to the victim's car when it was stolen. *Id.* at 3-4.

On July 16, 2013, Johnson visited Bobbie, who said Terry Reed drove her and her nephew, Quentin Reed ("Quentin"), to Walmart. *Id.* at 4. Bobbie agreed to go to the police station for a formal interview. *Id.* Johnson reviewed the video, which he determined showed the victim leaving the car keys on the top of her car with Reed's car parked next to it, Bobbie entering Walmart, and later a tall male from Reed's car taking the victim's keys and giving them to a second person in Reed's car, who got in the victim's car and drove it away. *Id.* Johnson then formally interviewed Bobbie with Detective Earles present. *Id.* Earles recently had been promoted to detective; Johnson was Earles's Field Training Officer, and Earles sat in on the interview. Earles Aff. Doc. No. 16-2. At the formal interview Bobbie denied any knowledge about the stolen car. She told Johnson that Quentin stayed in Reed's car when she went into Walmart, that Quentin was gone when she returned, and that Reed told her Quentin left with a friend named Mike. Johnson Aff. Doc. No. 16-1, at 4. Bobbie said it appeared to be Quentin who entered the victim's car. *Id.* at 5.

Johnson then interviewed Reed at the police department. Reed denied Quentin drove away with the victim's car. *Id.* Johnson then interviewed Quentin, who confessed to taking the car and later meeting up with Reed, who drove the car into a hiding spot in

the woods.  Quentin agreed to show the car to officers.  *Id.*  Earles was present at these interviews.  Earles Aff. Doc. No. 16-2.

Johnson discussed the matter with the District Attorney, who approved felony warrants for theft of property for Reed and Quentin.  Johnson Aff. Doc. No. 16-1, at 4.  Earles and Johnson escorted Quentin to a spot in Troy County near Bobbie's home, where Reed was then living, and they recovered the car.  *Id.* at 5-6.

A clerk typed up warrants for Reed and Quentin.  The victim signed the Complaint and Deposition for them.  *Id.* at 6.  Arrest warrants were issued for Reed and Quentin.  Johnson then arrested Reed and Quentin at the police station on July 16, 2013.  *Id.* Earles did not make the arrests.  *Id.*; Earles Aff. Doc. No. 16-2.

A grand jury indicted Reed on October 29, 2013.  Doc. No. 41-4, at 2.  As of November 21, 2016, Reed had not been tried, and his criminal proceedings were still pending.  Doc. No. 41.  The court takes judicial notice that Reed's trial is currently scheduled for March 13, 2017.  *Alabama v. Terry Reed*, No. CC-2013-000253.00, available at https://v2.alacourt.com/ (last visited Feb. 27, 2017).  Reed submitted an affidavit from Quentin, who pleaded guilty to the theft, stating that although Reed was present, Quentin "alone acted in entering, cranking, driving off and stealing" the car.  Quentin Aff. Doc. No. 29-1, ¶¶ 4, 10.

**B.  Discussion**

Reed claims that Johnson threatened to arrest Reed for the July 9, 2013, incident involving 250 gallons of gas, and that Johnson arrested Reed on July 13, 2013, in

retaliation for not being able to arrest Reed for the July 9, 20133, incident.  Reed further claims there was no probable cause to arrest him.   Reed claims that Earles knew of Johnson's unconstitutional acts but failed to intervene.[2]  Doc. No. 5, at 3; Doc. No. 29.

Where, as here, a plaintiff raises a § 1983 claim for damages based on a Fourth Amendment violation after being arrested pursuant to a warrant, the claim should be construed as one for malicious prosecution.  *See Whiting v. Traylor*, 85 F.3d 581, 586 (11th Cir. 1996).   The claim is treated as one for malicious prosecution because the arrest—even an invalid one--constitutes a step in the legal process.  *Carter v. Gore*, 557 F. App'x 904, 906 (11th Cir. 2014) ("The issuance of a warrant—even an invalid one as [plaintiff] alleges was issued here—constitutes legal process, and thus, where an individual has been arrested pursuant to a warrant, his claim is for malicious prosecution rather than false arrest.") (citations omitted).   To prove a § 1983 malicious prosecution claim, a plaintiff must establish (1) a federal Fourth Amendment violation, and (2) the elements of the common law tort of malicious prosecution.  *Holland v. City of Auburn, Alabama*, 657 F. App'x 899, 902 (11th Cir. 2016) (citing *Wood v. Kesler*, 323 F.3d 872, 881 (11th Cir. 2003)).  To establish malicious prosecution, a plaintiff must show:

> "(1) a criminal prosecution instituted or continued by the present defendant; (2) with malice and without probable cause; (3) that terminated in the plaintiff accused's favor; and (4) caused damage to the plaintiff accused." [*Wood*, 323 F.3d at 882]; *see Grider v. City of Auburn*, 618 F.3d 1240, 1256 (11th Cir. 2010) (noting that Alabama law for malicious prosecution is the same except that it requires only a "judicial proceeding" not a "criminal prosecution").

---

[2] Reed initially indicated he suffered medical injuries from his arrest, but he did not specifically make a claim of cruel and unusual punishment or thereafter pursue the claim.  Doc. No. 5, at 3.  To the extent Reed might have raised such a claim, the court deems it waived.

*Holland*, 657 F. App'x at 902.

It is undisputed that Reed's prosecution is ongoing and has not terminated in his favor. Reed has no malicious prosecution claim until the underlying proceeding terminates in his favor. *Whiting*, 85. F3d. at 585. Consequently, he cannot establish an element of a prima facie case for malicious prosecution, and defendants are entitled to judgment as a matter of law. Reed may wait to file suit until the prosecution terminates in his favor. *Id.* at 586; *see also Heck v. Humphrey*, 512 U.S. 477, 484 (1994) (distinguishing false arrest from malicious prosecution, stating, "unlike the related cause of action for false arrest or imprisonment, [malicious prosecution] permits damages for confinement imposed pursuant to legal process" including "'compensation for any arrest or imprisonment, including damages for discomfort or injury to his health, or loss of time and deprivation of the society'") (citations omitted); *see also Carter*, 557 F. App'x at 906 (quoting *Heck*, 512 U.S. at 484).

### III. CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1. The defendants' motion for summary judgment be GRANTED.

2. Judgment be GRANTED in favor of the defendants.

3. The plaintiff's claims be dismissed without prejudice.

4. Costs be taxed against the plaintiff.

It is further

ORDERED that on or before **March 7, 2017** the parties may file objections to the Recommendation. Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which a party objects. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982). *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982). *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done this 21st day of February, 2017.

/s/Charles S. Coody
CHARLES S. COODY
UNITED STATES MAGISTRATE JUDGE